

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 23, 2019.**

_____
CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| In re: | § | |
|---|---|---|
| | § | Case No. 19-52862 |
| BHAKTEL, LLC | § | |
| | § | Chapter 11 |
| Debtor. | § | |
| | § | |

**AGREED ORDER GRANTING DEBTOR'S MOTION FOR EMERGENCY INTERIM USE OF CASH COLLATERAL**

CAME ON FOR CONSIDERATION in the above captioned case, the Motion for Emergency Interim Use of Cash Collateral (the "Motion") of Bhaktel, LLC ("Debtor") seeking authorization to use cash collateral on an interim basis. The Court, having reviewed the Motion and all supporting papers and pleadings, being advised in the premises therefore, upon the agreement of Debtor and its secured lender, Celtic Bank Corporation ("Celtic Bank") and finding good cause for the relief requested, hereby makes the following findings of fact and conclusions

of law:

A. On December 2, 2019, Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Debtor is operating its business and managing its properties as debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. As of the entry of this Interim Order, this Court has not appointed a trustee or examiner.

B. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtor's chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(1).

C. Prior to the Petition Date, on December 30, 2015, Debtor executed a U.S. Small Business Administration Note in the principal amount of $1,496,000.00 (the "Note") and Commercial Security Agreement (the "Security Agreement") in favor of Celtic Bank.

D. The Security Agreement grants Celtic Bank a lien on all inventory, chattel paper, accounts, equipment, general intangibles and fixtures, including (i) all accessions, attachments, accessories, tools, parts, supplies, replacements of and additions thereto, (ii) all products and produce thereof, (iii) all accounts, general intangibles, instruments, rents, monies, payments and all other rights arising out of a sale, lease, consignment or other disposition thereof, (iv) all proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition thereof and (v) all records and data relating thereto (collectively, the "Personal Property Collateral").

E. On December 30, 2015, Debtor executed a Deed of Trust against the real property commonly known as 1101 Country Club Dr., Kirksville, MO 63501 (the "Real Property Collateral," collectively with the Personal Property Collateral, the "Collateral").

F.   The amounts owed to Celtic Bank pursuant to the Note are (a) legal, valid, binding, and enforceable against Debtor and each guarantor thereof; and (b) not subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of re-characterization, claim of avoidance of any nature, attack, or challenge under the Bankruptcy Code, other applicable non-bankruptcy law, or otherwise.

G.   The security interests and liens granted to and held by Celtic Bank are legal, valid, enforceable, non-avoidable, and duly and properly perfected security interests in and liens upon the Collateral and, as of the Petition Date, Debtor is not aware of any liens or security interests having priority over the liens held by Celtic Bank.

H.   The liens on the Collateral were granted to Celtic Bank, for the benefit of the Debtor, for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of the loans and financial accommodations secured thereby.

I.   Debtor represents, stipulates, acknowledges, and agrees that: All cash, cash proceeds, and all other "cash collateral" (as defined in section 363(a) of the Bankruptcy Code) of Debtor wherever located and whether constituting original collateral, proceeds from advances or other loans, or proceeds of the Collateral, are encumbered by Celtic Bank's liens and, as such, constitute "cash collateral" of Celtic Bank (as such term is defined in section 363(a) of the Bankruptcy Code).

J.   As a result of (the use of Cash Collateral (as hereinafter defined) pursuant to section 363(c) of the Bankruptcy Code, the use, sale, or lease of certain collateral (other than Cash Collateral) and the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, Celtic Bank is entitled to adequate protection for and to the extent of any diminution in value of its interest in the Collateral. Celtic Bank has consented to the terms and

conditions in this Order.

K. Debtor requires the use of Celtic Bank's cash collateral (the "Cash Collateral") in order to continue its ordinary course business operations and to maintain the value of their bankruptcy estates.

Based upon the foregoing finding, it is HEREBY ORDERED that:

1. The Motion is GRANTED on an interim basis as set forth herein.

2. A final hearing on the Motion shall be held on January 21, 2020 at 10:30 a.m. prevailing Central time before the Honorable Craig Gargotta, United States Bankruptcy Judge, in Courtroom No. 3, Hipolito F. Garcia Federal Building and Courthouse, 615 E. Houston Street, San Antonio, TX 78205. Any objection or response to entry of a further order approving the Motion shall be filed on or before January 14, 2020 and served on the following parties: (a) Debtor and Debtor's counsel, (b) Office of the United States Trustee, (c) Lender's counsel, Megan M. Adeyemo at Gordon Rees Scully Mansukhani LLP, (d) Debtor's twenty largest unsecured creditors, and (e) all entities that have filed a request for service of filings in the Chapter 11 case pursuant to Fed. R. Bankr. P. 2002.

3. Debtor is authorized to use Cash Collateral as follows:

(a) Debtors are authorized to use the proceeds (including, without limitation, cash, accounts, negotiable instruments and any other property comprising "cash collateral" within the meaning of 11 U.S.C. § 363(a)) of any portion of the Collateral (all such proceeds, whether arising or collected prior to or after the Petition Date (including all cash on hand), being collectively referred to herein as, "Cash Collateral") only for funding general working capital purposes and operating expenses in accordance with the Budget.

(b) Attached hereto as Exhibit A and incorporated herein by reference is a

4

monthly budget with detailed line-items setting forth Debtor's accounts payable on a monthly basis for the period beginning as of the Petition Date (the "Budget").

(c) Debtor may exceed any single line item in the Budget by 5%, not to exceed 10% of total variances (the "Permitted Variances").

(d) By not later than Wednesday of each calendar week after the Petition Date, Debtor deliver to Celtic Bank a variance report in form and substance reasonably acceptable to the Celtic Bank, comparing the actual disbursements of Debtor for the immediately preceding one-calendar week period to the Budget (the "Variance Report"). The Variance Report shall indicate whether there are any variances that exceed the "Permitted Variances."

(e) From and after the date of entry of this Order, all proceeds of the Collateral shall be remitted to one deposit account maintained by Debtor at an institution on the U.S. Trustee's list of approved banks (the "DIP Account"). In no event shall Debtor maintain any cash or other funds in any deposit account or securities or investment account other than the DIP Account. Provided (i) no Event of Default has occurred hereunder, and (ii) Debtor comply with all the provisions of this Order, Debtor may access the amounts in the DIP Account solely to the extent necessary to pay the items set forth in the Budget and authorized in this Order. All monies collected by Debtors shall be held in trust for the exclusive benefit of Celtic Bank whether or not such monies are actually remitted to the DIP Account.

4. **Adequate Protection.** As adequate protection for the use of Cash Collateral pursuant to § 363(c) of the Bankruptcy Code:

(i) Debtor shall make monthly payments to Celtic Bank as follows: (i) in January 2010, Debtor shall pay Celtic Bank $5,890 and (ii) beginning in February 2019 and continuing each month thereafter, Debtor shall pay Celtic Bank $11,780.

5

(ii) Interest at the non-default rate set forth in the Note shall continue to accrue for the benefit of Celtic Bank;

(ii) Effective upon entry of this Order, and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements or otherwise, Celtic Bank is granted valid, duly perfected and non-avoidable replacement security interests and liens in and to all of the postpetition Collateral. Such liens are referred to herein, as the "Adequate Protection Liens." Debtor shall not seek in any way to alter or cause to be subordinated the Adequate Protection Liens provided to Celtic Bank by this Order.

5. **Automatic Perfection of Liens.**

(a) The Adequate Protection Liens are deemed valid, binding, enforceable and perfected upon entry of this Order. Celtic Bank shall not be required to file any UCC-1 financing statements, mortgages, deeds of trust, security deeds, notices of lien or any similar document or take any other action (including possession of any of the postpetition Collateral) in order to validate the perfection of any of the Adequate Protection Liens.

6. **Subsequent Reversal or Modification.** Consistent with section 364(e) of the Bankruptcy Code, if any or all of the provisions of the Interim Order are hereafter reversed, modified, vacated or stayed on appeal, that action will not affect:

(a) the validity of any obligation, indebtedness, liability, or Adequate Protection Lien granted or incurred by Debtor to Celtic Bank prior to the effective date of such stay, modification, or vacation; or

(b) the validity, enforceability, or priority of any Adequate Protection Lien, priority, or right authorized or created under the original provisions of this Order; or

(c) the validity or enforceability of any action taken pursuant to the Interim Order or

6

this Final Order.

7. **No Deemed Control.** By consenting to this Order and the use of Cash Collateral, Celtic Bank shall not be deemed to be in control of any Debtor or its operations or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar state or federal statute) with respect to the operation or management of Debtor.

8. **Challenges to Liens and Claims.** Debtor has represented, acknowledged, stipulated, and agreed that all liens and security interests of Celtic Bank in the Collateral and the DIP Collateral are legal, valid, binding, enforceable, properly perfected, and non-avoidable, that the amounts due to Celtic Bank are allowable as a fully secured claim against Debtor, and that the amount due to Celtic Bank is valid, legal, binding, and enforceable and not subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of re-characterization, claim of avoidance of any nature, attack or challenge under the Bankruptcy Code, other applicable non-bankruptcy law or otherwise. Based on the foregoing, as of the date of entry of this Order, Debtor waives and releases any and all claims or causes of action against Celtic Bank and its respective officers, directors, employees, attorneys, agents or representatives relating to or arising in connection with the Note, Security Agreement and Deed of Trust.

9. **No Waiver.** This Order shall not be construed in any way as a waiver or relinquishment of any rights that Celtic Bank may have to bring or be heard on any matter brought before this Court.

10. **Entry of Order.** This Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Bankruptcy Rules 4001(a)(3), 6004(g), 7062, 9014,

or otherwise.

###End of Order###

SO AGREED:

GORDON REES SCULLY MANSUKHANI LLP

By: /s/ Megan M. Adeyemo
Megan M. Adeyemo (TX BN: 24099595)
2200 Ross Avenue, Suite 4100W
Dallas, TX 75201
Telephone: (214) 231-4660
Fax: (214) 461-4053
Email: madeyemo@grsm.com

*Counsel to Celtic Bank Corporation*

HEIDI MCLEOD LAW OFFICE PLLC

By: /s/ Heidi McLeod
Heidi McLeod (TX BN: 3764700)
3355 Cherry Ridge, Ste. 214
San Antonio, TX 78230
Telephone: (210) 853-0092
Fax: (210) 853-0129

Counsel for Debtor Bhaktel, LLC